IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| PANDORA JEWELRY, LLC and PANDORA SMYKKER USA APPS,<br><br>　　　　Plaintiff,<br><br>　　v.<br><br>ROBERT PUKA and PUKA CREATIONS,<br><br>　　　　Defendants.<br>_____ / | No. 04-3809 FMS<br><br>**ORDER GRANTING, IN PART, AND DENYING, IN PART, PLAINTIFFS' APPLICATION FOR DEFAULT JUDGMENT** |

**I. INTRODUCTION**

Plaintiffs Pandora Jewelry and Pandora Smykker USA filed an action against Defendants, Robert Puka and Puka Creations, alleging unfair competition, copyright infringement, trade dress infringement, dilution under federal law, common law unfair competition and trademark infringement (Lanham Act Claims) and violations of state statutory unfair competition law on September 9, 2004.  Complaint ¶ 1.  A default was entered against Defendants on November 15, 2005.  Plaintiffs now move for default judgment pursuant to Federal Rule of Civil Procedure 55(b).  Plaintiffs request 1) a default judgment against Defendants based on its Lanham Act and California Business and Professions Code Claims; 2) permanent injunction against Defendants pursuant to 15 U.S.C. section 1116; and 3) an award of $25,590.50 in attorneys fees and costs.  Plaintiffs' Memorandum in Support of Application at 1.  Hearing on the motion was held on June 23, 2005 at 2:00 pm, and additional briefing addressing the third party business, www.pandorajewelry.com, was received on Wednesday, June 29, 2005.

## II. BACKGROUND

Plaintiffs are designers and wholesalers of jewelry in Northern Europe and in the United States. Complaint ¶ 6. Plaintiffs began their jewelry business in Denmark in 1999, and began to sell and distribute their product in the United States in November of 2002. *Id.* ¶ 11. Plaintiffs registered copyright registrations for Pandora jewelry designs from February of 2000 through November of 2003 and continue to be the sole proprietor of all rights to the mark. *Id.* ¶¶ 11, 12.

Plaintiffs create, manufacture, market, distribute and sell sterling silver and fourteen karat gold jewelry through nearly 800 retailers in the United States, *id.* ¶ 14, and maintain a website advertizing their product at www.pandora-jewelry.com. *Id.* ¶ 13. Plaintiffs purport to have, approximately, $10 million in wholesale business sales for the last several years. *Id.* Plaintiffs further assert that their distinctive Pandora mark is both recognized and central to its product promotion, and holds "enormous value." *Id.* ¶ 16.

Defendants Puka also manufacture, advertize, promote and sell jewelry and maintain a sales business on the internet. *Id.* ¶ 17. Plaintiffs maintain that Defendants' products are very similar to Pandora's line of jewelry, featuring similar sterling silver and fourteen karat gold jewelry beads. *Id.* Further, Defendants marketed the jewelry under the name Zpandora.[1]

On August 17, 2004, Defendants' business came to the attention of Pandora, whereby Pandora contacted Defendants to demand that they stop using Plaintiffs' protected mark. *Id.* at 22. According to Plaintiffs, Defendants refused to stop marketing their jewelry under the Zpandora name.

Plaintiffs have asserted that Defendants' conduct is intentionally fraudulent and malicious because Defendants have purposefully copied Plaintiffs unique jewelry designs and marketed them to the public under the confusingly similar mark, Zpandora. *Id.* ¶¶ 25-

---

[1] Defendants currently maintain a website, www.beadshopusa.com, and market the silver beads in question under the name zpuka. The site also includes a 2005 catalog that features the zpuka beads, stating they are "similar hand blown art beads made for the zpandora, pandora and zoppini brands...."

29. According to Plaintiffs, Defendants have purposefully infringed on Plaintiffs' reputation and goodwill in the marketplace. *Id.* ¶ 24. Although properly served pursuant to Federal Rule of Civil Procedure 4(e), Defendants have not responded to this action. Plaintiffs' Memorandum at 2-3.

### III. LEGAL STANDARDS AND ANALYSIS

Pursuant to Federal Rule of Civil Procedure 55(b)(2), a party may apply to the court to enter judgment after default is entered provided that 1) a default was entered in the case; 2) the defendant failed to respond to that complaint; 3) the defendant is neither an infant nor an incompetent person; 4) the defendant is not in military service pursuant to the Soldiers and Sailors Civil Relief Act of 1940; and 5) the defendant was served with the notice of the application for default judgment. Fed. R. Civ. P. 55(b). Further, the default judgment motion must request relief consistent with the relief prayed for in the complaint. Fed. R. Civ. P. 54(c).[2]

If necessary, a court may conduct a hearing in order to investigate the matters before it, and to determine the amount of damages, if any, that should be awarded. *Id.* Whether or not to award a default judgment is discretionary. *See Aldabe v. Aldabe*, 616 F.2d 1089, 1092 (9th Cir. 1980). Thus, before a court enters judgment, it may assess the following factors:

> 1) the possibility of prejudice to the plaintiff, 2) the merits of plaintiff's substantive claim, 3) the sufficiency of the complaint, 4) the sum of money at stake in the action, 5) the possibility of a dispute concerning material facts, 6) whether the default was due to excusable neglect, and 7) the strong policy underlying the Federal Rules of Civil Procedure favoring decisions on the merits.

*Eitel v. McCool*, 782 F.2d 1470, 1471-72 (9th Cir. 1986).

The default entry deems the well-pleaded allegations of the complaint, pertaining to liability, admitted. *See TeleVideo System, Inc. v. Heidenthal*, 826 F.2d

---

[2] These elements appear satisfied in this case. *See* Plaintiffs' Memorandum at 3.

915, 917-18 (9th Cir. 1987). In this case, the relevant allegations supporting the Federal and State claims include the following:

1) Pandora's business began in 1999, and has been distributing merchandise in the United States since November of 2002 under the mark "Pandora." Complaint ¶ 11

2) Plaintiffs Pandora own copyright registrations for Pandora Jewelry Designs. *Id.* ¶ 39.

3) Plaintiffs' mark, Pandora, has acquired marketing value, and is known and accepted in the marketplace. *Id.* ¶¶ 14, 16.

4) Plaintiffs have had wholesale business sales of approximately $10 million since 2002. *Id.* at 14.

5) Defendants Puka, via its website, have marketed and sold similarly designed jewelry in silver and fourteen karat gold, under the name "Zpandora." *Id.* ¶ 17.

6) Defendants are attempting to pass off their products as those manufactured by Plaintiffs Pandora, infringing on Plaintiffs' rightfully registered mark. *Id.* ¶ 24.

7) Defendants have purposely copied Plaintiffs' mark in order to trade on Pandora's good will and trade reputation. *Id.*

8) Defendants have attempted to pass off their designs as those of Plaintiffs' in order to deceive the public. *Id.* ¶ 26.

### 1. Federal Unfair Competition, 15 U.S.C. § 1125(a)(1)(A), Claims One and Three

Section (a)(1)-(A) prohibit:

(1) Any person who, on or in connection with any goods or services, or any container for goods, uses in commerce any word, term, name, symbol, or device, or any combination thereof, or any false designation of the origin, false or misleading description of fact, or false or misleading representation of fact which–
(A) is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of such person with another person, or as to the origin, sponsorship, or approval of his or her goods, services, or commercial activities by another person

15 U.S.C. § 1125(a)(1)(A).

In order to prevail in demonstrating a false designation of origin, Plaintiffs must show 1) that the mark is both valid and protectable; 2) that they own the mark as a trademark; 3) that they use the mark in commerce; and 4) that the defendant has used the mark and/or designs without the consent of the plaintiff, and that such use is likely to cause confusion. *Brookfield Communications, Inc. v. West Coast Entertainment Corp.*, 174 F.3d 1036, 1046-47, n.8 (9th Cir. 1999).

Plaintiffs have adequately shown that they own the Pandora mark, that the mark is both valid and protectable and that Defendants have used the mark, or a mark substantially similar to the Plaintiffs' mark, which is likely to cause confusion given the similarity of product and the methods of marketing. *See* 15 U.S.C. § 1125(a)(1)(A). Supporting this assertion, Plaintiffs have demonstrated that they registered the valid Pandora jewelry designs and name, and that after such registration and use in the marketplace, Defendants used the similar mark "Zpandora," without consent, to market similar jewelry over the internet, potentially causing confusion. Thus, Plaintiffs have adequately pled their claims of Federal Unfair Competition and Trade Dress Infringement.

### 2. Dilution of Famous Marks, 15 U.S.C. § 1125(c), Claim Four

A plaintiff may request injunctive relief under the Trademark Dilution Act if they demonstrate that: 1) the mark is famous; 2) that the defendant has commercially used the mark; 3) that the defendant's use began after the plaintiff's use of the mark became famous; and 4) that defendant's use has diluted the distinctiveness of the mark. *Avery Dennison Corp. v. Sumpton*, 189 F.3d 868, 873-74 (9th Cir. 1999). The difficulty with prevailing on this claim ties primarily to the famousness factor. Not every mark is famous. Only a limited number are truly famous, having strong consumer associations linking the mark to only one single commercial producer. Only these truly famous marks warrant the anti-dilution protection of the Act. *Id.* at 875.

There are eight, non-exclusive factors that may guide the Court on this Claim:

1   1) the degree of inherent or acquired distinctiveness of the mark;

2   2) the duration and extent of use of the mark in connection with the goods or
3   services with which the mark is used;

4   3) the duration and extent of advertising and publicity of the mark

5   4) the geographical extent of the trading area in which the mark is used;

6   5) the channels of trade for the goods or services with which the mark is used;

7   6) the degree of recognition of the mark in the trading areas and channels of
8   trade used by the mark's owner and the person against whom the injunction is
9   sought;

10   7) the nature and extent of use of the same or similar marks by third parties;
11   and

12   8) whether the mark was registered on the principal register.

Plaintiffs have failed to adequately demonstrate the dilution of their mark pursuant to 15 U.S.C. § 1125(c) because it is not clear that Plaintiffs' mark is famous enough to warrant this anti-dilution protection.

Reviewing the eight non-exclusive factors, *see Avery Dennison*, 189 F.3d at 873-74, Plaintiffs have not demonstrated that the Pandora mark is distinctive enough in the channels of trade to merit famousness.  Although Plaintiffs submitted a supplemental briefing addressing the channels of trade and the distinctiveness of the mark, they have failed to address why a possibly competing jewelry business, using the web address www.pandorajewelry.com, does not erode the purported distinctiveness of the Pandora name.  Plaintiffs' response, that there is evidence neither demonstrating when the possibly competing site became active nor supporting the extent of consumer recognition of the other Pandora website, does not strengthen the Plaintiffs' argument that the mark is famous. *See* Supplemental Memorandum at 7.  If other jewelry businesses use websites featuring the Pandora name, it is questionable whether the Plaintiffs can demonstrate that Defendants Puka's use dilutes the impact of the brand.

### 3. *State Unfair Competition, Cal. Bus & Prof Code § 17203, Fifth Claim*

Pursuant to section 17203, "any person who engages, has engaged, or proposes to engage in unfair competition may be enjoined in any court of competent jurisdiction."

California Business and Professions Code Section 17200 prohibits unfair competition, which includes unlawful, unfair or fraudulent business practices. In determining what constitutes "unlawful, unfair or fraudulent" practices, the Ninth Circuit has held that 17200 claims are "substantially congruent" to those asserted under the Lanham Act. *Academy of Motion Pictures Arts and Sciences v. Creative House Promotions*, 944 F.2d 1446, 1457 (9th Cir. 1991). The determining factor is ultimately "whether the public is likely to be deceived or confused by the similarity of the marks." *Id.* (citations omitted). Thus, if the plaintiffs are successful in their Lanham Act claims, they are also entitled to injunction based on their state Unfair Competition claim for relief. *Id.*

When the defendants marketed the substantially similar jewelry under the name Zpandora, it is likely that they engaged in unfair competition and/or fraudulent business practices and, thus, should be enjoined. Further, because Plaintiffs have prevailed on their Federal Unfair Competition Claims, state injunctive relief should also be granted.

### 4. *Injury to Business Reputation, Cal. Bus. & Prof. Code §14330.  Claim Six*

Section 14330 provides that the "likelihood of injury to business reputation or of dilution of the distinctive quality of a mark registered under this chapter, or a mark valid at common law, or a trade name valid at common law, shall be a ground for injunctive relief notwithstanding the absence of competition between the parties or the absence of confusion as to the source of goods or services."

The California law is substantially similar to the Federal anti-dilution law in that a plaintiff must demonstrate either likely injury to its business reputation or

dilution of a distinctive mark. *Avery Dennison*, 189 F.3d 868 (9th Cir. 1999). As discussed above, Plaintiffs have both failed to demonstrate dilution and injury to their business reputation.

### 5. *Eitel Factors*

The *Eitel* factors weigh in favor of entering a default judgment in favor of the plaintiffs on the Federal and State Unfair Competition Claims. First, Plaintiffs will face prejudice if the default judgment is not entered on their behalf. Without a default judgment, the plaintiffs are left with virtually no remedy to stop the infringing behavior of the defendants in the future. Second, the plaintiffs have adequately laid out the merits of the Unfair Competition claims and, third, have alleged an adequate factual basis to support them. Fourth, Plaintiffs have requested injunctive relief, which further weighs in favor of entering judgment on their behalf because there is no sum of money at issue. Last, even though the Federal Rules favor decisions on the merits, the plaintiff must not be prejudiced when the defendants fail to participate in the case. These factors favor the entry of default judgment in this case.

### 6. *Injunctive Relief*

Plaintiffs have requested injunctive relief, primarily to stop Defendants from continuing to infringe on Plaintiffs' trademarks. Although it is not clear that the defendants have continued to sell products using the name "Zpandora," it is not "absolutely clear" that Defendants will not again infringe in the future. *Pepsico*, 238 F. Supp. 2d 1172, 1178-79 (C.D. Cal. 2002). Thus, injunctive relief is appropriate given the Federal and State Unfair Competition Claims discussed above.

### 7. *Attorneys' Fees*

Attorneys' fees are permitted by the Lanham Act and may be awarded in "exceptional" cases where the act of infringement was fraudulent, deliberate or willful. 15 U.S.C. § 1117; *Playboy Enterprises, Inc. v. Baccarat Clothing Co., Inc.*, 692 F.2d 1272, 1276 (9th Cir. 1982).

1  Plaintiffs have requested both costs and attorneys fees of $25,590.50 because
2  Defendants "knowingly and willfully" violated the federal statutes. The Court agrees
3  that Defendants' violation was knowing and willful and awards costs and fees to
4  Plaintiffs. These costs and fees appear reasonable given the complexity of the case,
5  and are adequately supported by the Plaintiffs' briefing.

Further, although attorneys fees are not intended to compensate plaintiffs, an award of the fees would further deter defendants from continuing to engage in similar infringing behavior in the future. *See Playboy Enterprises,* 692 F. 2d at 1274-75 (discussing the importance of making violations of the Lanham Act unprofitable, and asserting that the public is injured if the court provides no other remedy than injunction).

## IV. CONCLUSION

For the foregoing reasons the Court GRANTS Plaintiffs' request for default judgment based on the Federal and State Unfair Competition Claims. Defendants Robert Puka and Puka Creations, their employees, agents, officers, directors, attorneys, successors, affiliates, subsidiaries and assigns, and all those in active concert and participation with the defendants are permanently enjoined from:

1) Using or authorizing any third party to use as a trademark, service mark, business name, trade name, domain name or symbol of origin the infringing ZPANDORA mark or from using any counterfeit, copy, simulation, confusingly similar variation, or colorable imitation of plaintiff's distinctive PANDORA mark or trade dress is any manner or form, on or in connection with any business, products or services, or in the marketing, advertising and promotion of same;

2) Imitating, copying or making any unauthorized use of Plaintiffs' distinctive PANDORA mark or trade dress or any copy, simulation, variation or imitation thereof;

3) Making or displaying any statement or representation that is likely to lead the public or the trade to believe that defendants' goods are in any manner associated or affiliated with or approved, endorsed, licensed, sponsored, authorized or franchised by or are otherwise connected with Plaintiffs;

4) Using or authorizing any third party to use in connection with the rendering, offering, advertising, promotion or importing of any goods, any false description, false representation, or false designation of origin, or any marks, names, words, symbols, devices or trade dress which falsely associate such goods or services with plaintiffs or tend to do so;

5) Registering or applying to register as a trademark, service mark, trade name, domain name or other source identifier or symbol of origin any mark, trade dress or name including the distinctive PANDORA mark or any other mark that infringes or is likely to be confused with plaintiffs' distinctive PANDORA mark;

6) Engaging in any other activity constituting unfair competition with plaintiffs, or constituting an infringement of plaintiffs' distinctive PANDORA mark or trade dress, or of plaintiffs' rights therein;

7) Aiding, assisting or abetting any other party in doing any act prohibited by sub-paragraphs 1-7.

Plaintiffs' application for default judgment based on Federal and State Dilution claims are DENIED without prejudice.

Defendants are hereby ORDERED to pay costs and attorneys fees of $25,590.50. The clerk is ORDERED to close the case.

**IT IS SO ORDERED.**

Dated: June 30, 2005

/s/
FERN M. SMITH
UNITED STATES DISTRICT JUDGE